# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: | ' |
| | ' CASE NO. 08-12751 |
| WADLEIGH ENERGY GROUP, INC., [1] | ' |
| et al, | ' |
| | ' Chapter 11 |
| Debtors. | ' (Jointly Administered) |

| | |
|---|---|
| POST CONFIRMATION BOARD OF | ' |
| WADLEIGH ENERGY GROUP, INC. | ' |
| ET AL., as TRUSTEE OF THE | ' |
| WADLEIGH LITIGATION TRUST, | ' |
| | ' |
| Plaintiff, | ' |
| | ' |
| vs. | ' |
| | ' Adversary No. 10-01125 |
| RALPH WADLEIGH, KRISTIAN | ' |
| WADLEIGH, MICHELLE WADLEIGH, | ' |
| BLUEWATER EQUIPMENT RENTALS, | ' |
| INC., and WADLEIGH STABLES, INC. | ' |
| | ' |
| Defendants. | ' |

## FIRST AMENDED COMPLAINT

The Post Confirmation Board of Wadleigh Energy Group, Inc., et al., as the Trustee of the Wadleigh Litigation Trust, files this First Amended Complaint (the "Complaint") against the following defendants ("Defendants"): Ralph Wadleigh ("RW"), Kristian Wadleigh ("KW"), Michelle Wadleigh ("MW"), Bluewater Equipment Rentals, Inc. ("Bluewater"), Wadleigh Stables, Inc. ("Stables"); and alleges as follows:

---

[1] Wadleigh and Associates, Inc. ("Associates") (08-12753); Mega International, Inc. ("Mega") (08-12752); and Harley Crane Services, Inc. ("Harley") (08-12754) were jointly administered with Wadleigh Energy Group, Inc. (individually, "Group"; collectively, the "Debtors") pursuant to an order of the Bankruptcy Court dated April 8, 2009 [P-72].

1

I CERTIFY THAT THIS DOCUMENT IS A TRUE COPY OF THE ORIGINAL ON FILE IN THIS COURT:

____ MAR 2014

DEPUTY CLERK
UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

## I.    Introduction

1.    On November 12, 2008, the Debtors filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") in the Bankruptcy Court of the United States District Courts of the Eastern District of Louisiana.    The Debtors' individual bankruptcy cases are collectively referred to as the "Bankruptcy Cases".

2.    This adversary proceeding against the Defendants is brought under Fed. R. Bankr. P. 7001.

## II.    Jurisdiction and Venue

3.    This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(a) and 1334(a).    This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(E) and (H).

4.    Venue of this adversary proceeding is proper in this district pursuant to 28 U.S.C. § 1409.

## III.    Parties

5.    The plaintiff is the Debtors' Post Confirmation Board, in its capacity as Trustee (the "Trustee") for the Wadleigh Litigation Trust (the "Trust"), which was formed and authorized by Debtors' Amended Plan of Reorganization as of August 13, 2010 (the "Confirmed Plan") [D.I. 520] and the Order Confirming Chapter 11 Amended Plan of Reorganization as of August 13, 2010 (the "Confirmation Order") [D.I. 524].    Under the Confirmed Plan, all Causes of Action and Retained Causes of Action (as those terms are defined therein) were transferred to the Trust as of the effective date of the Confirmed Plan, to be pursued by the Trustee, as a representative of the Debtors' estates under 11 U.S.C. § 1123(b)(3)(B), for the benefit of holders

of allowed claims.  The effective date of the Confirmed Plan was September 1, 2010.  See the Notice of Effective Date [D.I. 528].

6.      The Debtors are an affiliated group of companies that perform services and rent equipment in the oil field services business [See Confirmed Plan at 26].  The business of the Debtors is managed almost entirely by RW [See Confirmed Plan at 27].

7.      RW owns the following equity interests in the Debtors:  100% of Group, 100% of Mega, 50.5% of Associates, and 100% of Harley [See Confirmed Plan at 27-28].  RW is also a director of Bluewater and the registered agent, president and sole director of Stables.

8.      KW is the son of RW and is the president of three of the Debtors:  Group, Harley, and Mega.  KW is also a director of Bluewater.

9.      MW is the ex-wife of RW.

10.     Bluewater is a Louisiana corporation.  RW and KW are the directors of Bluewater and KW is Bluewater's registered agent.  Upon information and belief, RW owns a controlling interest in Bluewater.

11.     Stables is a Louisiana corporation.  RW is the registered agent of Stables, as well as the president and sole director.  Upon information and belief, RW owns a controlling interest in Stables.

12.     Each of the Defendants is, on information and belief, an insider of the Debtors as that term is defined in 11 U.S.C. § 101(31).

### IV.    Background Facts

13.     The Defendants received numerous avoidable transfers (the "Transfers") from the Debtors pre-petition and post-petition as described in further detail below.

14.     Each Transfer constituted a transfer of an interest of property of the Debtors.

15.     Each Transfer was made, or caused to be made, to or for the benefit of the Defendants, each of whom is an insider of the Debtors.

16.     Upon information and belief, each Transfer was a "gratuitous" transfer under Louisiana law.

17.     Upon information and belief, the Defendants are also the recipients of other transfers of an interest in property of the Debtors which are subject to avoidance, but which are not described below as the Transfers.

**A.     The Bluewater Transfers**

18.     Between November 24, 2008 and August 20, 2009, the Debtors transferred $879,117.50 to Bluewater (the "Bluewater Transfers").   The summary attached hereto and incorporated herein as **Exhibit "A"** (the "Bluewater Summary") details the dates, check numbers and amounts of the Bluewater Transfers.

19.     Bluewater subsequently transferred the proceeds of the Bluewater Transfers to RW, KW and Stables.

20.     The Bluewater Summary traces the individual Bluewater Transfers which were subsequently transferred to RW, KW and Stables.

21.     Bluewater transferred $563,176.19 of the Bluewater Transfers to RW.

22.     Bluewater transferred $100,000.00 of the Bluewater Transfers to KW.

23.     Bluewater transferred $218,441.31 of the Bluewater Transfers to Stables.

**B.     The Credit Card Transfers**

24.     Between May 3, 2008 and July 28, 2009, RW incurred $217,301.48 in charges on an American Express credit card (the "RW Credit Card Charges").   The summary attached hereto and incorporated herein as **Exhibit "B"** (the "RW Credit Card Summary") details the

dates, descriptions, locations and amounts of the RW Credit Card Charges. On information and belief, the RW Credit Card Charges were personal expenses, and not business expenses of the Debtors.

25.    The Debtors paid the RW Credit Card Charges (the "RW Credit Card Transfers") detailed on the RW Credit Card Summary.

26.    Between December 5, 2007 and July 7, 2009, KW incurred $54,852.98 in personal charges on an American Express credit card (the "KW Credit Card Charges"). The summary attached hereto and incorporated herein as **Exhibit "C"** (the "KW Credit Card Summary") details the dates, descriptions, locations and amounts of the KW Credit Card Charges. On information and belief, the RW Credit Card Charges were personal expenses, and not business expenses of the Debtors.

27.    The Debtors paid the KW Credit Card Charges (the "KW Credit Card Transfers") detailed on the KW Credit Card Summary.

28.    Between August 18, 2008 and October 24, 2008, Debtors paid $110,405.39 (the "MW Credit Card Transfers") for MW's personal charges on an American Express credit card (the "MW Credit Card Charges"). The summary attached hereto and incorporated herein as **Exhibit "D"** (the "MW Credit Card Summary") provides some details on the MW Credit Card Transfers.

## C.    The Advances to RW and Bluewater

29.    RW withdrew funds from the Debtors on numerous occasions for deposit in RW's accounts or for RW's personal use (the "RW Advances").

30.    As of September 30, 2010, the RW Advances include, as reflected on the books and records of the Debtors, $3,205,283.35 owed to Group, $1,438,784.70 owed to Mega,

$608,999.10 owed to Harley and $98,553.09 owed to Associates.  As of September 30, 2010, the Debtors had advanced $1,668,350.31 to Bluewater (the "Bluewater Advances"), which may have been, on information and belief, for personal use.

**D.  The MW Distributions**

31.    Between January 9, 2008 and October 3, 2008, the Debtors made a series of transfers to MW totaling at least $57,875.26 (the "MW Distributions").  The summary attached hereto and incorporated herein as **Exhibit "E"** (the "Distribution Summary") details the dates and amounts of the MW Distributions.

**E.  The Stables Distributions**

32.    Between January 9, 2008 and November 3, 2008, the Debtors made a series of transfers to Stables totaling at least $187,376.47 (the "Stables Distributions").  The Distribution Summary details the dates and amounts of the Stables Distributions.

**F.  The Additional Transfers**

33.    Between November 12, 2007 and November 3, 2008, the Debtors made additional avoidable transfers described on the Distribution Summary, on the General Ledger attached hereto as **Exhibit "F,"** and on the Debtors' Statements of Financial Affairs (the "Additional Transfers").

34.    To the extent the Additional Transfers have been made to or for the benefit of any of the Defendants, the Trustee seeks to recover such Additional Transfers.  Specifically and without limitation, on information and belief, the Additional Transfers listed on the first nine pages of Exhibit "F" (totaling $1,475,221.84) were made to or for the benefit of RW, in addition to for the benefit of the listed entities (which includes the specific entries set forth for Defendants MW and Stables).  Specifically and without limitation, on information and belief, the Additional

6

Transfers listed on the last page of Exhibit "F" (totaling $269,390.22) were made to or for the benefit of KW.

35.     The Trustee additionally reserves the right to amend this Complaint to avoid any other transfers to the Defendants or any other party as further discovery or analysis demonstrate that such transfers are avoidable.

36.     The Transfers that are the subject of this Complaint include without limitation the Bluewater Transfers, RW Credit Card Transfers, KW Credit Card Transfers, MW Credit Card Transfers, RW Advances, Bluewater Advances, MW Distributions, Stables Distributions, and Additional Transfers.

**G.      The Mazuma Claim and Mazuma Claim Order**

37.     On or about December 4, 2006, Bluewater entered into Master Lease Agreement No. MCC0945 (including any and all amendments, the "Lease") with Mazuma Capital Corp. ("Mazuma").  A copy of the Lease is attached as **Exhibit "G"** hereto.

38.     On or about December 4, 2006, RW and MW executed a written guaranty of all of Bluewater's obligations under the Lease (the "RW/MW Guaranty").  A copy of the RW/MW Guaranty is attached as **Exhibit "H"** hereto.

39.     On or about December 4, 2006, Group executed a written guaranty of all of Bluewater's obligations under the Lease (the "Group Guaranty").  A copy of the Group Guaranty is attached as **Exhibit "I"** hereto.  On or about December 4, 2006, Mega executed a written guaranty of all of Bluewater's obligations under the Lease (the "Mega Guaranty").  A copy of the Mega Guaranty is attached as **Exhibit "J"** hereto.  On or about December 4, 2006, Harley executed a written guaranty of all of Bluewater's obligations under the Lease (the "Harley Guaranty").  A copy of the Group Guaranty is attached as **Exhibit "K"** hereto.  On or about

December 4, 2006, Associates executed a written guaranty of all of Bluewater's obligations under the Lease (the "Associates Guaranty"). A copy of the Group Guaranty is attached as **Exhibit "L"** hereto.

40.    Pursuant to the RW/MW Guaranty, a surety and/or guarantor relationship was created with RW and MW as the sureties and guarantors, Mazuma as the creditor and Bluewater as principal obligor.

41.    Pursuant to the Group Guaranty, Mega Guaranty, Harley Guaranty, and Associates Guaranty, a surety relationship was created with Group, Mega, Harley, and Associates as the sureties and guarantors, Mazuma as the creditor and Bluewater as principal obligor.

42.    The principal cause of the RW/MW Guaranty and the Group Guaranty, Mega Guaranty, Harley Guaranty, and Associates Guaranty, is to guarantee performance of the Lease.

43.    Bluewater breached the Lease by failing to pay amounts due under the Lease.

44.    RW and MW breached the RW/MW Guaranty by failing to pay amounts due.

45.    Mazuma filed suit against Bluewater for breach of the Lease and against RW for breach of the RW/MW Guaranty, in the United States District Court for the District of Utah, commencing case number 2:08-cv-000538-DB (the "Utah Case").

46.    On October 28, 2009, Mazuma obtained a judgment (the "Utah Judgment") in the Utah Case (*See* **Exhibit "M"**):

   a.  against RW and Bluewater jointly and severally in the amount of $578,714.46 at a rate of 18% per annum from July 22, 2008, until that sum is paid;

   b.  against RW and Bluewater jointly and severally for all amounts due under the Lease in the sum of $1,055,400.12 for future monthly payments during the base period, discounted at 7% per annum, plus interest on $1,055,400.12 at a rate of 18% per annum from July 22, 2008, until that sum is paid;

8

c. for attorneys fees and costs in the amount of $28,818.26, plus attorneys fees and costs incurred in collecting on the judgment.

47.     Mazuma has asserted a claim ("Mazuma Claim") against Group and the other Debtors in the above-captioned main bankruptcy case through the following: On September 30, 2009, Mazuma filed a Proof of Claim in the above-captioned main bankruptcy case to assert a claim in the total amount of $1,781,942.90 (plus interest, attorney's fees, and costs of collection, but less the sum of $36,000.00) against Group and the other Debtors in the above-captioned bankruptcy case, for amounts due under the Group Guaranty, Mega Guaranty, Harley Guaranty, and Associates Guaranty in connection with the Utah Judgment, Bluewater's breach of the Lease, and RW's and MW's breach of the RW/MW Guaranty.  On March 11, 2011, Mazuma amended its proof of claim to $1,816,839.77.

48.     On February 25, 2011, the Debtors filed a Claim Objection ("Claim Objection") objecting to the Mazuma Claim.

49.     The Debtors, the Trustee, and Mazuma later settled the Claim Objection through the Bankruptcy Court's entry of the agreed *Order Regarding Objection to Proof of Claim of Mazuma Capital Corporation*, (a) liquidating Mazuma's claim for breach of the Lease under the Group Guaranty and (b) allowing such claim against the Debtors jointly and severally in the amount of $1,371,879.43 (the "Mazuma Claim Order"), entered on September 16, 2011 [Docket #680]; which fixed the Mazuma Claim in the amount of $1,371,879.43.

### IV.     Claims for Relief

### Count 1: Fraudulent Transfers Pursuant to 11 U.S.C. § 548

50.     Paragraphs 1 through 49 are incorporated by reference as if fully set forth herein.

51.     Pursuant to 11 U.S.C. § 548, the Trustee seeks to avoid those Transfers made on or within two years before the Petition Date (the "Pre-Petition Transfers").

9

52.     The Debtors made the Pre-Petition Transfers with actual intent to hinder, delay or defraud their existing and future creditors.

53.     The Debtors received less than reasonably equivalent value for the Pre-Petition Transfers.

54.     The Debtors were insolvent on the dates of the Pre-Petition Transfers or became insolvent as a result of the Pre-Petition Transfers.

55.     The Debtors were engaged in a business or transaction for which the Debtors' respective remaining property was an unreasonably small capital.

56.     The Debtors intended to incur or believed they would incur debts beyond their respective abilities to pay as such debts matured.

57.     The Debtors made the Pre-Petition Transfers to or for the benefit of insiders (the Defendants).

## Count 2: Preferential Transfers Pursuant to 11 U.S.C. § 547

58.     Paragraphs 1 through 57 are incorporated by reference as if fully set forth herein.

59.     Section 547(b) of the Bankruptcy Code provides, in pertinent part, that:

> [T]he trustee may avoid any transfer of an interest of the debtor in property—
>> (1) to or for the benefit of a creditor;
>> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
>> 3) made while the debtor was insolvent;
>> (4) made –
>>> (A) on or within 90 days before the date of the filing of the petition; or
>>> (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
>> (5) that enables such creditor to receive more than such creditor would receive if –
>>> (A) the case were a case under Chapter 7 of this title;
>>> (B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

60.     During the year prior to the Petition Date, that is, between November 12, 2007 and November 12, 2008 (the "Preference Period"), the Debtors transferred, and/or caused to be transferred, property to the Defendants in the form of multiple payments including those described above as the Transfers.

61.     To the extent that any of the Transfers was on account of an antecedent debt owed by the Debtors to the Defendants prior to the date on which such Transfers were made, the Trustee is thus entitled to avoid such Transfers pursuant to 11 U.S.C. § 547(b).

62.     During the Preference Period, the Debtors may have been insolvent within the meaning of the Bankruptcy Code (i.e. the sum of their debts were greater than the fair value of the assets).  Furthermore, a debtor is presumed to have been insolvent during the Preference Period.  See 11 U.S.C. § 547(f).  In addition, the Summary of Schedules filed by the Debtors list liabilities far in excess of their assets.

63.     The Transfers enabled the Defendants to receive more than they would have received if these Bankruptcy Cases were cases under Chapter 7 of the Bankruptcy Code, the Transfers had not been made, and the Defendants received payment of the debts relating to the Transfers to the extent provided by the provisions of the Bankruptcy Code.  In this case, the unsecured creditors may not receive a dividend equal to 100% of their allowed claims if all payments under the Plan are not made.  In all cases where unsecured creditors will not receive a dividend equal to 100% of their allowed claims, 11 U.S.C. § 547(b)(5) is satisfied.

64.     Pursuant to section 547(b) of the Bankruptcy Code, the Trustee may avoid the Transfers made during the Preference Period on account of antecedent debt.

**Count 3: Post-Petition Transfers Pursuant to 11 U.S.C. § 549**

11

65.     Paragraphs 1 through 64 are incorporated by reference as if fully set forth herein.

66.     Prior to confirmation, the Debtors made the following post-petition transfers (the "Post-Petition Transfers") totaling at least $1,313,720.46:

a.     The Bluewater Transfers;
b.     RW Credit Card Transfers; and
c.     a portion of the KW Credit Card Transfers (totaling $28,206.72).

67.     Upon information and belief, the Post-petition Transfers were not authorized by the Bankruptcy Code or this Court.

68.     Pursuant to section 549(a) of the Bankruptcy Code, the Trustee may avoid the Post-petition Transfers.

## Count 4: Recovery of Transfers Pursuant to 11 U.S.C. § 550

69.     Paragraphs 1 through 68 are incorporated by reference as if fully set forth herein.

70.     The Defendants are the initial transferees of the funds transferred.   In the alternative, the Defendants are the immediate or mediate transferees of such initial transferee.

71.     Pursuant to section 550(a) of the Bankruptcy Code, the Trustee may recover the Transfers, or the value of the Transfers, from the Defendants.

## Count 5: Turnover; Bankruptcy Code Section 542(b)

72.     Paragraphs 1 through 71 are incorporated by reference as if fully set forth herein.

73.     Defendants owe the Debtors amounts that they withdrew from the Debtors, including, without limitation, the amounts of the Transfers, which are all assets of the estate pursuant to Section 541(a)(1) of the Bankruptcy Code.

74.     Pursuant to Section 542(b), the amounts withdrawn from the Debtors, including, without limitation, the amounts of the Transfers, all constitute debts to the estate that are matured, payable on demand or payable on order, and Defendants should be ordered to repay

such amounts as turnover to the Trustee.

## Count 6: Bankruptcy Code Section 544(b)

75.     Paragraphs 1 through 74 are incorporated by reference as if fully set forth herein.

Defendants.

76.     To the extent that the claims herein arise pursuant to 11 U.S.C. §544(b), the

Trustee is asserting the rights of creditors with unsecured claims allowable in the bankruptcy

case, who were creditors at the time of the Transfers and/or became creditors after the Transfers,

and who could avoid the Transfers under the Louisiana Revocatory Action and fraudulent

transfer laws, and other applicable state law.

## Count 7: Equitable Subordination Pursuant to 11 U.S.C. § 510(c)

77.     Paragraphs 1 through 76 are incorporated by reference as if fully set forth herein.

78.     Section 510(c) of the Bankruptcy Code provides for equitable subordination:

Notwithstanding subsections (a) and (b) of this section, after notice and a hearing, the court may—

    (1)     under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed

    (2)     order that any lien securing such a subordinated claim be transferred to the estate.

79.     To the extent that the Defendants have filed proofs of claim or asserted claims,

such claims should be equitably subordinated to all other allowed claims.

80.     To the extent that the Defendants have liens against any of the Debtors' assets,

such liens securing such subordinated claims should be transferred to the Debtors' estates.

## Count 8: Breach of Duties of Trustee by the Directors and Officers of the Debtors-in-Possession Pursuant to 11 U.S.C. §§ 704, 1106 and 1107

81.     Paragraphs 1 through 80 are incorporated by reference as if fully set forth herein.

82.    Directors and officers of a debtor in possession owe the same fiduciary duties as a trustee in bankruptcy, as set out in 11 U.S.C. §§ 704, 1106 and 1107.

83.    KW and RW breached the following trust fund duties by failing to maximize the current value for creditors and shareholders, effecting or causing the Debtors to effect the Post-Petition Transfers for their own personal benefit (or that of their family members and other interests), and making the Post-Petition Transfers in violation of 11 U.S.C. § 549.

84.    Pursuant to 11 U.S.C. §§ 704, 1106 and 1107, the Trustee is entitled to recover from KW and RW for the damages caused by such post-petition breaches of fiduciary duties.

## Count 9: Breach of Fiduciary Duty Pursuant to State Law

85.    Paragraphs 1 through 84 are incorporated by reference as if fully set forth herein.

86.    The Defendants each owed a fiduciary duty to the Debtors.

87.    The Defendants breached their fiduciary duties owed to the Debtors.

88.    The Defendants each participated in the intentional breach of fiduciary duties owed to the Debtors.

89.    The Defendants each acted outside the limits of their authority with respect to the Debtors.

90.    The Defendants each defrauded the Debtors by taking their respective Transfers from the Debtors.

91.    The Defendants thereby each intentionally breached the trust of the Debtors or knowingly participated in the breach of trust of the Debtors.

92.    The Debtors suffered damages by the Defendants' breaches of fiduciary duties to the Debtors.

93.    The Trustee is entitled to recover damages from each of the Defendants for breach

14

of fiduciary duty, including attorneys fees and costs.

**Count 10: Unjust Enrichment Pursuant to State Law**

94.     Paragraphs 1 through 93 are incorporated by reference as if fully set forth herein.

95.     The Defendants were enriched by the Transfers.

96.     The Debtors were impoverished by the Transfers.

97.     The Defendants' enrichment by the Transfers corresponds directly to the impoverishment of the Debtors.

98.     No justification or cause exists for the Defendants' enrichment or the Debtors' impoverishment.

99.     In the absence of any other remedy at law, the Trustee is entitled to recover damages to the extent that the Defendants were unjustly enriched.

**Count 11: Fraud Pursuant to State Law**

100.    Paragraphs 1 through 99 are incorporated by reference as if fully set forth herein.

101.    The Defendants each defrauded the Debtors and the Debtors' creditors by taking their respective Transfers from the Debtors for no consideration.

102.    The Debtors suffered damages by the Defendants' fraudulent acts.

103.    The Trustee is entitled to recover damages from each of the Defendants for fraud, including attorneys fees and costs.

104.    Pursuant to La. C.C. arts. 1953 through 1957 and other applicable law, Trustee asserts fraud on the part of Defendants.

105.    On information and belief, Defendants caused Transfers to Bluewater, including without limitation the Bluewater Transfers and Bluewater Advances, to be made to Bluewater despite the fact that Bluewater had not rendered corresponding performance or value to the

Debtors.  In addition, Defendants subsequently caused the monies transferred to Bluewater to be transferred to personal accounts or otherwise were used for the personal benefit of Defendants.

106.    On information and belief, the other Transfers were also fraudulent because their true purpose and use was not disclosed.  For example, the Credit Card Transfers were not made for business expenses but were made, on information and belief, for personal expenses.

107.    On information and belief, the Transfers were also fraudulent because when made, Defendants had no intention of repaying or reimbursing the Debtors for such Transfers, despite Defendants' commitment to repay or reimburse some or all of the Transfers.

108.    Defendants' fraud induced the Debtors to make the Transfers to Defendants because such Transfers were made under the false pretense that such transfers would be eventually repaid, or under the false pretense that such Transfers were business expenses or were otherwise proper expenses.

109.    As a result of this fraud, the Trustee is entitled to recover its damages, losses, and attorney's fees.

## Count 12: Single Business Enterprise / Piercing the Corporate Veil / "Reverse" Piercing of the Corporate Veil

110.    Paragraphs 1 through 109 are incorporated by reference as if fully set forth herein.

111.    On information and belief, Bluewater, Wadleigh Stables, RW, KW and/or other Defendants together constitute a single business enterprise under Louisiana law.  On information and belief, Bluewater and Wadleigh Stables are entities with an identity or substantial identity of ownership, since, on information and belief, the same persons (RW) own both entities.  These same persons (RW, and potentially, KW) on information and belief, serve as the common directors or officers of Bluewater and Wadleigh Stables.

112.    On information and belief, Bluewater and Wadleigh Stables have unified or joint

administrative control and centralized accounting, and common employees.

113.    On information and belief, Bluewater and Wadleigh Stables, and other entities owned or controlled by RW, may have effectively financed each others' operations (and may have paid for expenses or losses of each; and one or both of Bluewater and Wadleigh Stables may be inadequately capitalized.  Some transfers between these entities may not have been documented or fully documented.

114.    On information and belief, there may be no clear allocation of profits and losses between Bluewater and Wadleigh Stables.

115.    Based on the foregoing, the Trustee is entitled to recover from each of the individual Defendants for liabilities of the corporate Defendants under a single business enterprise or veil piercing theory, and from each of the corporate Defendants for liabilities of the individual Defendants under a single business enterprise or reverse veil piercing theory.

**Count 13: Breach of Contract**

116.    Paragraphs 1 through 115 are incorporated by reference as if fully set forth herein. To the extent that RW, KW, and/or any other Defendants had an employment contract or other contract with one or more of the Debtors, the Trustee asserts that payment of the Bluewater Transfers, Credit Card Transfers, RW Advances, Bluewater Advances, MW Advances, Stables Distributions, and/or Additional Transfers and failure to repay same constitutes breach of contract.

117.    RW, KW, and/or other Defendants may have had employment or other agreements with one or more of the Debtors ("Agreements") governing, among other things, advances or other sums withdrawn by RW, KW, and/or other Defendants from the Debtors.

118.    The Debtors performed all of their obligations under the Agreements.

17

119.    The Debtors sustained losses when the Bluewater Transfers, Credit Card Transfers, RW Advances, Bluewater Advances, MW Advances, Stables Distributions, and/or Additional Transfers were made and not repaid to the Debtors; and on information and belief, such losses were caused by Defendants' failure to honor their obligations under the Agreements to (i) repay such amounts or (ii) not make such Transfers in the first place.

## Count 14: Recovery of Unlawful Distributions Under La. R.S. 12:92

120.    Paragraphs 1 through 119 are incorporated by reference as if fully set forth herein.

121.    The Trustee asserts that some or all of the Bluewater Transfers, Credit Card Transfers, RW Advances, Bluewater Advances, MW Advances, Stables Distributions, and/or Additional Transfers were unlawful distributions within the meaning of La. R.S. 12:92(D), because such distributions were unlawful under, without limitation, La. R.S. 12:1 et seq., the Bankruptcy Code, or other applicable law.

122.    RW, and any other Defendants who may have been directors of the Debtors, on information and belief, knowingly, or without the exercise of reasonable care and inquiry, voted in favor or assented to the Transfers.

123.    As a result, RW and any other Defendants who may have been directors of the Debtors are liable jointly and severally for repayment of the Transfers.

## Count 15: Recovery of Unlawful Distributions Under La. R.S. 12:93

124.    Paragraphs 1 through 123 are incorporated by reference as if fully set forth herein.

125.    The Trustee asserts that some or all of the Transfers were unlawful distributions within the meaning of La. R.S. 12:93(D), because such distributions were unlawful under, without limitation, La. R.S. 12:1 et seq., the Bankruptcy Code, or other applicable law.

18

126.    As a result, RW and any other Defendants who may have been a shareholder of the Debtors are liable for repayment of the Transfers received by them.

**Count 16: Conversion Pursuant to State Law**

127.    Paragraphs 1 through 126 are incorporated by reference as if fully set forth herein.

128.    The Defendants took their respective Transfers from the Debtors in derogation of the Debtors' possessory rights.

129.    The Defendants had no right to use any of the Debtors' assets for any purpose other than to benefit the Debtors.

130.    The Defendants wrongfully exercised or assumed authority over property of the Debtors, including the funds identified as the Transfers.

131.    The Debtors suffered damages thereby at least in the amount of the Transfers.

132.    The Trustee is entitled to recover damages from the Defendants for conversion of the funds identified as the Transfers.

**Count 17: Repayment of Money Loaned or Advanced / Enforcement of Obligations Under State Law**

133.    Paragraphs 1 through 132 are incorporated by reference as if fully set forth herein.

134.    Defendants owe the Debtors, as a conventional or other obligation under Louisiana law, all amounts withdrawn from the Debtors, including, without limitation, the amounts of the Transfers.

135.    Defendants have withdrawn such amounts as loans, advances or styled in some other fashion, and Defendants have not repaid such amounts to the Debtors or the Trustees.

136.    The amounts withdrawn from the Debtors, including, without limitation, the amounts of the Transfers all constitute obligations to the estate that are matured, payable on demand or payable on order, and Defendants are liable to repay such amounts as conventional or

other obligations under Louisiana law.

### Count 18: Revocatory Action

137.    Paragraphs 1 through 136 are incorporated by reference as if fully set forth herein.

138.    Pursuant to La. Civil Code arts. 2036 through 2042, the Trustee brings a revocatory action to annul certain acts of Defendants.

139.    The Trustee seeks to annul any and all acts that were made by Defendants that caused or increased Defendant's insolvency, including without limitation the Bluewater Transfers and Bluewater Advances, in which funds transferred to Bluewater from the Debtors were subsequently withdrawn, on information and belief, for the personal use of RW, KW, and/or other Defendants (such transfers from Bluewater and/or other Defendants being the "Subsequent Transfers").

140.    Each of the Subsequent Transfers were made after the rights of the Debtors as obligees arose, since such transfers were made subsequent to the funds being withdrawn from the Debtors' accounts.

141.    Each of the Subsequent Transfers had the effect of causing or increasing the transferor's insolvency.  Specifically, on information and belief, the Subsequent Transfers were entirely gratuitous and were for no consideration; therefore, in such transfers.

142.    The Trust was not created until the Confirmed Plan was entered by Court order as of August 13, 2010, and therefore the Trust could not have learned of the occurrence of the Subsequent Transfers until at least that date.  On information and belief, the Subsequent Transfers were not discovered until a point in time less than one year before the filing of the original Complaint.

### Count 19: Waste, Negligence and Gross Negligence

143.    Paragraphs 1 through 142 are incorporated by reference as if fully set forth herein.

144.    The Debtors' directors and officers owed a duty of reasonable prudence to the Debtors.  As previously alleged, KW and RW acted negligently in their management of the Debtors' business.    These Defendants' indifference to their corporate responsibilities as previously alleged resulted in mismanagement of the Debtors and waste of their assets.  These Defendants' negligence caused substantial damages to the Debtors, their creditors and shareholders, for which the Trustee now sues.  These Defendants were negligent by failing to take the actions necessary to protect assets and by committing or permitting a wasting of corporate assets by allowing the Debtors to make the Transfers when there were means available to prevent the Transfers and maximize the value of the assets for the Debtors.

145.    Before and after the Petition Date, KW and RW were negligent in not performing (as described above) by:

    a.  Not protecting the Debtors from adverse acts caused by KW, RW or other parties;

    b.  Not otherwise preserving or maximizing the current value of the Debtors for the creditors;

    c.  Allowing the Debtors to pay the personal expenses of the Defendants and make the Transfers;

    d.  Allowing the officers and directors (including KW and RW) to participate in transactions in which they were conflicted; and

    e.  Failing to conserve and protect the Debtors' cash flow revenues.

146.    The Trustee is entitled to recover from KW and RW for the damages caused by such waste of corporate assets, negligence and gross negligence, which stripped the Debtors of millions of dollars.  KW and RW's acts, errors and omissions were committed with such recklessness and wanton disregard to the interests of the Debtors and their creditors as to

constitute gross negligence, for which the Trustee also seeks to recover exemplary and/or punitive damages.

## Count 20: Civil Contempt Pursuant to 11 U.S.C. § 362

147.     Paragraphs 1 through 146 are incorporated by reference as if fully set forth herein.

148.     When the Debtors filed for protection under the Bankruptcy Code, their assets were protected by the automatic stay imposed by the Section 362, the equivalent of an automatic injunction.

149.     That injunction provided that the Defendants were stayed from any act to obtain possession of property of the Debtors' estates or of property from the Debtors' estates or to exercise control over property of the Debtors' estates. Additionally, the Confirmed Plan vests property of the Debtors in the Debtors.

150.     As stated more fully above, the Defendants were in wrongful possession of the property that is the subject of the Transfers, which was under the protection of the Bankruptcy Code.

151.     Civil contempt may be used to compensate for injury resulting from non-compliance with the automatic stay and violation of the Court's Confirmation Order.

152.     The Trustee is entitled to damages for the injuries that resulted from the Debtors' violation of the automatic stay and the Confirmation Order.

## Count 21: Subrogation

153.     Paragraphs 1 through 152 are incorporated by reference as if fully set forth herein.

154.     The principal obligation under the Mazuma Claim Order is due and eligible.

155.     By virtue of the Group Guaranty, Mega Guaranty, Harley Guaranty, Associates Guaranty, RW/MW Guaranty, and Lease, Group, Mega, Harley, and Associates are subrogated by operation of law to the rights of Mazuma.

156.    The Trustee, on behalf of the Debtors' estates, is entitled to reimbursement from Bluewater, as principal obligor, for any amount paid by the Debtors under the Mazuma Claim Order.

157.    The Trustee is also entitled to recover by subrogation such attorneys fees and interest as are owed with respect to the principal obligation under the Mazuma Claim Order.

### Count 22: Contribution and/or Reimbursement from Solidary Obligor

158.    Paragraphs 1 through 157 are incorporated by reference as if fully set forth herein.

159.    Upon information and belief, RW, MW, Group, Mega, Harley, and Associates are the only guarantors of the Lease.

160.    Accordingly, RW, MW, Group, Mega, Harley, and Associates are solidary obligors to the extent of the RW/MW Guaranty and Group Guaranty, Mega Guaranty, Harley Guaranty, and Associates Guaranty.

161.    With respect to each other, RW, MW, Group, Mega, Harley, and Associates each have a virile share obligation for the Mazuma Claim.

162.    Group, Mega, Harley, and Associates are subrogated by operation of law to the rights of Mazuma under the Lease, RW/MW Guaranty and Mazuma Claim Order.

163.    The Trustee, on behalf of the Debtors' estates, is entitled to contribution and/or reimbursement from RW and MW, as solidary obligors, for the amount by which the payment from the Debtors' estates under the Mazuma Claim Order (as paid under the Confirmed Plan) exceeds their virile shares of the Mazuma Claim (as established in the Mazuma Claim Order).

164.    The Trustee also seeks costs and attorneys fees to the extent allowable under applicable law.

### Count 23: Reimbursement and/or Indemnity from Primary Obligor and Co-Obligor

165.    Paragraphs 1 through 164 are incorporated by reference as if fully set forth herein.

23

166.     Upon information and belief, RW, MW, Group, Mega, Harley, and Associates are the only guarantors of the Lease.

167.     Under the Mazuma Claim Order and Confirmed Plan, the Debtors' estates are discharging a debt for which Bluewater is primarily liable.

168.     Under the Mazuma Claim Order and Confirmed Plan, the Debtors' estates are discharging a debt for which RW and MW are jointly liable as co-obligors with Group, Mega, Harley, and Associates.

169.     The Trustee, on behalf of Group, Mega, Harley, and Associates, is entitled to reimbursement and/or indemnity from Bluewater for all amounts paid under the Mazuma Claim Order.

170.     The Trustee, on behalf of Group, Mega, Harley, and Associates, is entitled to reimbursement and/or indemnity from RW and MW for all amounts paid under the Mazuma Claim Order.

171.     The Trustee also seeks costs and attorneys fees to the extent allowable under applicable law.

Wherefore, the Plaintiff, the Post Confirmation Board, in its capacity as Trustee for the Wadleigh Litigation Trust, respectfully requests entry of judgment against the Defendants, RW, KW, MW, Bluewater and Stables as follows:

    i.    Avoiding the Transfers and awarding a judgment in the amount of the Transfers against all Defendants, jointly and in solido, under Sections 548, 547, 549, 550, 542, 544, 704, 1106, 1107, and 362 of the Bankruptcy Code;

    ii.    equitably subordinating any claims asserted by Defendants under Section 510 of the Bankruptcy Code;

    iii.    Awarding a judgment in the amount of the Transfers against all Defendants, jointly and in solido, under state law as set forth above;

iv.      Awarding a judgment against Defendants RW, MW, and Bluewater in the amount paid by Group and Debtors under the Mazuma Claim Order and Confirmed Plan or in the alternative, in the amount paid by Group and Debtors under the Mazuma Claim Order and Confirmed Plan in excess of the virile share of the Mazuma Claim as established in the Mazuma Claim Order;

v.      Finding a single business enterprise and applying veil piercing and reverse veil piercing as set forth above;

vi.      Awarding the Trustee its attorney's fees, costs, and other expenses incurred in this action; and

vii.      Granting the Trustee such other and further relief as the Court deems just and proper.

Dated: September 14, 2012             Respectfully Submitted,

By: /s/ C. Davin Boldissar
**C. Davin Boldissar (La. #29094)**
**Locke Lord LLP**
601 Poydras Street, Suite 2660
New Orleans, Louisiana 70130-6036
Telephone: (504) 558-5100
Fax: (504) 558-5200

**ATTORNEYS FOR POST-CONFIRMATION BOARD OF WADLEIGH ENERGY GROUP, INC. ET AL., AS TRUSTEE OF THE WADLEIGH LITIGATION TRUST**